## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

CV 12 - 3299

WEXLER, J

BOYLE, M.J.

STEVEN COHEN, on behalf of himself and all
others similarly situated,

                         Plaintiff,

- against -

SCHELL & KAMPETER, INC. d/b/a
DIAMOND PET FOODS, DIAMOND PET
FOODS INC., and AMAZON.COM, INC,

                         Defendants.

Civil Action No.

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

U.S. DISTRICT COURT
EASTERN DISTRICT
2012 JUL -2 PM 3:5
FILED
CLERK

Plaintiff Steven Cohen ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned attorneys, for his Class Action Complaint against Defendants Schell & Kampeter, Inc. d/b/a Diamond Pet Foods, Diamond Pet Foods, Inc., (together, "Diamond"), and Amazon.com, Inc. ("Amazon") alleges, upon information and belief, except as to the allegations that pertain to Plaintiff which are based upon personal knowledge, as follows:

### NATURE OF THE ACTION

1.      This is a class action arising from a massive recall (the "Recall") of pet food manufactured, marketed and sold by Defendants, due to potential salmonella contamination across 17 brands of pet food that affected residents of states throughout the country.

2.      Diamond manufactures and sells "premium" pet food. On April 6, 2012, Diamond announced that it was recalling its "Diamond Naturals Lamb Meal & Rice," manufactured at Diamond's Gaston, South Carolina plant, because "the product has the potential to be contaminated with *Salmonella*." (italics in original). Diamond said that

consumers who purchased the recalled food "should discontinue feeding the product and discard it."

3.      This recall announcement took place after an investigation by the Food and Drug Administration ("FDA"), and the Center for Disease Control ("CDC"), which was prompted by a report from the Michigan Department of Agriculture and Rural Development that Salmonella had been found in an intact package of Diamond Naturals Lamb and Rice Formula for Adult Dogs, collected during retail surveillance sampling.

4.      Over the next two months, through June 13, 2012, the Recall was expanded to encompass 17 brands of dry dog and cat food due to potential Salmonella contamination. The Recall covers two different strains of salmonella from two different plants: the "rare" *Salmonella Infantis* from a Diamond Pet Foods plant in South Carolina and a different strain of Salmonella (Salmonella Liverpool) that was found at a separate Diamond Pet Foods Plant in Missouri.

5.      This is not the first time Diamond Pet Foods products were recalled for safety issues; in 2006, Diamond recalled 19 varieties of dog and cat food that had been sold domestically and exported to 29 countries—also manufactured at the Gaston, S.C. plaint— after at least 76 pets died from aflatoxin poisoning.

6.      Plaintiff purchased Taste of the Wild brand pet food for his dogs Maggie and Angel from the website of Defendant Amazon.com, Inc. ("Amazon").  In or about December, 2011, Plaintiff's dogs became ill, suffered from lethargy, and started vomiting frequently which caused damage to Plaintiff's property.  This condition lasted for several months, as Plaintiff continued to feed Taste of the Wild brand dog food to his dogs.

7.      After the April 6 recall of Diamond Naturals Lamb Meal & Rice, Plaintiff continued to feed Taste of the Wild to his dogs and had no reason to believe there was a problem with Taste of the Wild.  On May 10, 2012, Plaintiff received a notification of the Recall from Amazon.  Plaintiff immediately stopped feeding Taste of the Wild to his dogs.

**The Parties**

8.      Plaintiff is a resident of Suffolk County, New York and has been a resident thereof at all relevant times.  From June 15, 2011 through April 4, 2012, Plaintiff purchased Taste of the Wild brand dog food from Amazon.  Plaintiffs' dogs consumed Taste of the Wild from approximately June 15, 2011 until May 10, 2012, when Plaintiff learned of the recall and stopped feeding Taste of the Wild to his dogs.

9.      Schell & Kampeter, Inc. d/b/a Diamond Pet Foods is a Missouri corporation with headquarters at 103 North Olive Street, Meta, Missouri.  Schell manufactures and markets cat and dog food products. The company offers dry and canned food for dogs and cats, as well as biscuits for dogs.

10.     Diamond Pet Foods, Inc. is a Missouri corporation.  Diamond is a wholly-owned subsidiary of Schell, shares an address with Schell and shares many common executives with Schell.  Diamond has plants located in Meta, Missouri, Lathrop, California and Gaston, South Carolina; the company manufactures and sells dozens of product lines for dogs and cats.  Diamond's website states that its "mission is to provide the highest quality pet foods at an affordable price so that everyone, from a commercial kennel operation to a child feeding their first puppy or kitten, could afford high quality nutrition."  Under the heading "151 Quality Checks," Diamond's website states that Diamond "cares about the health and safety of your pet. From incoming ingredients to outgoing product, our

extensive quality control system checks our pet food for quality assurance every step of the way." Diamond's website states: "141 Ingredient Tests. 10 Final Product Checks. Zero Compromises."

11.     Defendant Amazon is a Delaware corporation with headquarters at 410 Terry Avenue North, Seattle, Washington. Amazon is the world's largest online retailer.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d). Plaintiff is a citizen of New York. Diamond is a citizen of Missouri. Amazon is a citizen of Washington and Delaware.

13.     Venue in this District is proper pursuant to 28 U.S.C. §1331 (a) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Defendants marketed and sold their pet food in this District, and Plaintiff, as well as other members of the Class, purchased Defendants' pet food in this District.

**SUBSTANTIVE ALLEGATIONS**

14.     Diamond promotes its original line of pet food as super-premium and sells its food for a premium price. Diamond manufactures and sells dog food and cat food for pets with various needs. Diamond manufactures and sells, among other things, food for puppies, pregnant or nursing dogs, overweight dogs, senior dogs, working or athletic dogs, and dogs of different sizes. Among the brand names Diamond manufactures and sells are:

- Chicken Soup for the Pet Lover's Soul;
- Country Value;
- Diamond;
- Diamond Naturals;

- Premium Edge;

- Professional;

- 4Health;

- Taste of the Wild;

- Apex;

- Kirkland Signature/Kirkland Signature Nature's Domain; and

- Canidae.

15.     Diamond also manufactures and sells food for cats, including cats that are adults, kittens, overweight, pregnant or nursing.  Cat food brands consist of Diamond and Diamond Natural.

16.     Diamond pet food is sold throughout the United States, including New York.

17.     In early April, 2012, the Michigan Department of Agriculture and Rural Development reported that it had detected Salmonella in an intact package of Diamond Naturals Lamb and Rice Formula for Adult Dogs, collected during retail surveillance sampling.  Thereafter, the United States Food and Drug Administration (the "FDA") became involved.  Diamond was notified of the sampling results and voluntarily recalled this product on April 6, 2012.

18.     However, this was not the end of the story.  After the salmonella was traced to Diamond's plant in Gaston, South Carolina, Diamond shut down its operations at that plant.

19.     The FDA conducted an inspection of the Gaston plant from April 12, 2012 through April 20, 2012.  The FDA inspection report, which was given to the plant manager at the Gaston Plant, noted the following:

**OBSERVATION 1**

All reasonable precautions are not taken to ensure that production procedures do not contribute contamination from any source.

Specifically, no microbiological analysis is conducted or there is no assurance that incoming animal fat will not introduce pathogens into their production and cause contamination of finished product. Also, the firm's current sampling procedure for animal digest does (sic) preclude potential for adulteration after sampling and during storage in warehouse. On 4/13/12, an employee was observed touching in-line fat filter and oil with bare hands.

**OBSERVATION 2**

Failure to provide hand washing and hand sanitizing facilities at each location in the plant where needed.

Specifically, there are no facilities for hand washing or hand sanitizing in the production areas where there is direct contact with exposed finished feed/food.

**OBSERVATION 3**

Failure to maintain equipment, containers and utensils used to convey, hold, and store food in a manner that protects against contamination.

Specifically, paddles in conveyor (South or Middle conveyor leading to the screeners going to packaging) were observed to have gouges and cuts, which exhibited feed residues. The damage to the paddles may allow for harborage areas for microorganisms and are difficult to clean and sanitize.

**OBSERVATION 4**

Failure to maintain equipment so as to facilitate cleaning of the equipment.

Specifically, firm utilizes cardboard, duct tape, and other non cleanable surfaces on equipment. These materials were observed to have residues adhering. The foam gaskets around access doors to the bucket elevators were observed in deteriorating condition and exhibited an accumulation of feed residues and dust.

20.     Thereafter, the Recall rapidly expanded.   On April 26, 2012, Diamond recalled Chicken Soup for the Pet Lover's Soul.

21.     On April 30, 2012, Diamond recalled Diamond Puppy Formula.

22.     On May 4, 2012, Apex Dog Food, a brand manufactured by Diamond, was recalled.

23.     On May 5, 2012, the Recall was once again expanded to include *all* products of the following brands manufactured between December 9, 2011 and April 7, 2012: Chicken Soup for the Pet Lover's Soul; Country Value; Diamond; Diamond Naturals; Premium Edge; Professional; 4Health; and, finally, the brand Plaintiff purchased, Taste of the Wild.

24.     Also on May 5, 2012, Canidae announced a recall of its pet food that was manufactured by Diamond between December 9, 2011 and January 31, 2012.

25.     On May 18, 2012, Diamond further expanded the Recall to include Diamond Naturals Small Breed Adult dog Lamb & Rice Formula dry dog food manufactured on August 26, 2011.   Still further, Diamond recalled numerous Kirkland brand products.

26.     In total, Diamond recalled 17 brands of dry dog and cat food due to potential Salmonella contamination, according to the FDA.

27.     Several other companies with products manufactured at Diamond's Gaston, S.C. plant issued recalls, because some of their products were produced at the Gaston facility during the time frame of the recalls and have the potential to be contaminated with Salmonella.   Those companies include Dick Van Patten's Natural Balance, Apex Pet Foods, Canidae, Wellpet LLC, and Solid Gold Health Products for Pets.

28.     In addition to pets, humans suffered from Diamond's manufacturing and sale of tainted pet food. As of June 19, 2012, 16 people were reported to have become ill after being exposed to salmonella-tainted dry dog food manufactured and sold by Diamond. In order to determine the origin of the salmonella poisoning, public health investigators used DNA fingerprints of the salmonella to identify past cases of illness linked to the outbreak.  People infected with the outbreak strain became sick between October 8, 2011 and April 22, 2012.

**PLAINTIFF'S EXPERIENCE WITH THE RECALLED PET FOOD**

29.     In or about June, 2011, Plaintiff began feeding Taste of the Wild to his dogs. Taste of the Wild was the only food Plaintiff fed to his dogs. Plaintiff purchased Taste of the Wild from Amazon.com.

30.     In or about December, 2011, Plaintiffs' dogs became ill, suffered from lethargy, and started vomiting frequently which caused damage to Plaintiff's property. This condition lasted for several months, as Plaintiff continued to feed Taste of the Wild brand dog food to his dogs.

31.     After the April 6 recall, Plaintiff continued to feed Taste of the Wild to his dogs and had no reason to believe there was a problem with Taste of the Wild.  On May 10, 2012, Plaintiff received a notification of the Recall from Amazon.  The notification stated that some or all of the Taste of the Wild purchased by Plaintiff had been recalled.  Plaintiff immediately stopped feeding Taste of the Wild to his dogs.

32.     After receiving the notification from Amazon, Plaintiff discarded the contaminated food, as instructed by Defendants, but retained the bag in which the product was packaged.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of a proposed nationwide class and a New York sub-class (the

"Classes") as follows:

**Nationwide Class:** All consumers in the United States who purchased the pet food

recalled by Defendants.

**New York Sub-Class:** All consumers in the State of New York who purchased the

pet food recalled by Defendants.

34.     The members of the Class are so numerous that joinder of all members

would be impracticable.   Plaintiff estimates that there are hundreds of thousands of

purchasers of recalled foods.   Diamond's website states that the Recall has affected

consumers in at least the following states: Colorado, Illinois, Kentucky, Louisiana,

Michigan, Minnesota, Missouri, Oklahoma, Pennsylvania, South Dakota, Tennessee,

Texas, Wisconsin, Alabama, Florida, Georgia, Indiana, Massachusetts, Maryland,

Mississippi, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee,

Virginia, Connecticut, Delaware, New Hampshire, New Jersey, South Carolina,

Tennessee, Vermont, Virginia, and Puerto Rico

35.     There are questions of law and fact common to the members of the Class

that predominate over any questions affecting only individual members, including:

a.     Whether Defendants sold contaminated pet food;

b.     Whether Defendants' sale of contaminated pet food breached the

implied warranty of merchantability;

c.      Whether Defendants are liable under a strict products liability claim
        for selling contaminated pet food;

d.      Whether Defendants represented or allowed customers to believe that
        the recalled food was safe for consumption;

e.      Whether Defendants breached any express warranties concerning the
        recalled pet food;

f.      Whether Defendants were negligent in manufacturing or processing
        the pet food;

g.      Whether Defendants' negligence proximately caused injuries to
        Plaintiff and the Class;

h.      Whether Defendants are liable under N.Y. GBL §349 for failing to
        disclose the material fact that Defendants' pet food was contaminated
        with salmonella;

i.      Whether Defendants violated N.Y. GBL §350;

j.      Whether Defendants were unjustly enriched by the sale of
        contaminated pet food;

k.      Whether, as a result of Defendants' misconduct, Plaintiff and
        members of the Class are entitled to damages, equitable relief and/or
        other relief, and the amount and nature of such relief.

36.     The claims of Plaintiff are typical of the claims of the Classes because
Plaintiff, like all members of the Classes, unknowingly purchased contaminated foods
manufactured and sold by Defendants.  Plaintiff has no interests antagonistic to those of
the Classes, and Defendants have no defenses unique to Plaintiff.

37.    Plaintiff will fairly and adequately protect the interests of the Classes and has retained attorneys experienced in class and complex litigation.

38.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.    It is economically impractical for members of the Classes to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

b.    The Classes are readily ascertainable and definable; and

c.    Prosecution as a class action will eliminate the possibility of repetitive litigation.

39.    Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT I
## (BREACH OF IMPLIED WARRANTY)

40.    Plaintiff realleges and reasserts each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

41.    Defendants are merchants engaged in the business of selling pet food. Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food was fit for the purpose for which it was intended, which was to feed cats and dogs.

42.    Plaintiff and the Classes purchased the food manufactured and sold by Defendants. The pet food was not fit for its ordinary purpose and was recalled by Defendants.

43.    Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods.

44.    Plaintiff and the Classes were damaged as a result of Defendants' breach of the implied warranty of merchantability.

## COUNT II
## (STRICT PRODUCTS LIABILITY)

45.    Plaintiff realleges and reasserts each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

46.    Defendants are manufacturers or sellers of a product that caused harm to Plaintiffs and the Class.

47.    Defendants manufactured, distributed, marketed and sold pet food products containing salmonella that indeed sickened pets or, alternatively, that bore a high risk of making pets sick due to its potential contamination with salmonella. Defendants' contaminated food was not reasonably fit, suitable or safe for its intended purpose.

48.    Defendants' pet food was egregiously unsafe and had no usefulness as pet food.

49.    The pet food products were contaminated, defective and/or unreasonably dangerous when they left Defendants' control.

50.    Plaintiff and the Classes did not know and could not know that the pet food they purchased and fed to their pets was contaminated and/or potentially unsafe.

51.     The pet food products were not altered or misused by Plaintiffs, Class members or any third party.

52.     The unfit pet food products caused Plaintiff's and the Class' pets to become ill or to be at risk of becoming ill.

53.     Defendants' unfit and unsafe pet food products have caused Plaintiff and the Classes damages, including but not limited to loss of their pets, past and future veterinary expenses and other damages which are as of yet unknown.

## COUNT III
### (NEW YORK GEN. BUS. LAW SECTION 349)

54.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

55.     Plaintiff and other members of the Sub-Class are "consumers" in accordance with GBL §349.

56.     At all relevant times material hereto, Defendants conducted trade and commerce in New York and elsewhere within the meaning of GBL §349.

57.     Defendants materially misled Plaintiff and the Sub-Class by (1) selling food that purportedly was subject to "extensive quality control system checks our pet food for quality assurance every step of the way" and had been through "141 Ingredient Tests. 10 Final Product Checks. Zero Compromises" when in fact Diamond's pet food was not safe; and (2) failing to disclose material facts concerning the safety of Diamond's pet food to Plaintiff and the Class.

58.     Had Defendants disclosed all material information regarding the pet food to Plaintiff and the Sub-Class, they would not have purchased the pet food.

59.     The foregoing acts, omissions and practices proximately caused Plaintiff and other members of the Sub-Class to suffer actual injury.

**COUNT IV**
**(NEW YORK GEN. BUS. LAW SECTION 350)**

60.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

61.     NY GBL §350 prohibits false advertising in the conduct of any business, trade, trade or commerce or in the furnishing of any service.

62.     As alleged above, Defendants engaged in false advertising within the meaning of Defendants materially misled Plaintiff and the Sub-Class by (1) selling food that purportedly was subject to "extensive quality control system checks our pet food for quality assurance every step of the way" and had been through "141 Ingredient Tests. 10 Final Product Checks. Zero Compromises" when in fact Diamond's pet food was not safe; and (2) failing to disclose material facts concerning the safety of Diamond's pet food to Plaintiff and the Class.

63.     Had Defendants disclosed all material information regarding the pet food to Plaintiff and the Sub-Class, they would not have purchased the pet food.

64.     The foregoing acts, omissions and practices proximately caused Plaintiff and other members of the Sub-Class to suffer actual injury.

**COUNT V**
**(NEGLIGENCE)**

65.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

66.     Defendants owed Plaintiff and the Classes a duty to offer for sale save, non-contaminated Pet food for consumption by their pets.

67.     Defendants breached this duty by offering the contaminated pet food for sale.

68.     Defendants knew or should have known that their pet food was contaminated and unsafe.

69.     As a direct and proximate result of Defendants' above-referenced negligence, Plaintiff and the Classes have been harmed.

## COUNT VI
## (BREACH OF EXPRESS WARRANTY)

70.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

71.     Defendants expressly warranted that their pet food was safe for pets.

72.     Defendants' pet food did not conform to this express warranty because the pet food was and is not safe and has caused serious harm to pets.

73.     As a result of Defendants' breach of express warranty, Plaintiff and the Classes have suffered damages.

## COUNT VII
## (UNJUST ENRICHMENT)

74.     Plaintiff realleges and reasserts each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.  Defendants manufactured and sold contaminated pet food, which caused the dogs and cats of Plaintiff and the Class to become ill and/or die.

75.     As a result of the contamination, members of the Classes have experienced injury to their pets and/or have purchased a product that they would not have purchased had they known of the danger associated with the product and have thereby been damaged.

76.     Plaintiff and members of the Classes conferred upon Defendants, without knowledge of the contamination, payment for their pet food, benefits which were non-gratuitous.

77.     Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes.  Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

78.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.


**WHEREFORE**, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendants as follows:

A.     An order certifying the Classes and directing that this case proceed as a class action;

B.     Judgment in favor of Plaintiff and the members of the Classes in an amount of actual damages or restitution to be determined at trial;

C.     A court supervised medical monitoring program through which Class members' pets will receive periodic veterinary examinations to discover and treat the harm suffered by pets as a result of consuming Defendants' tainted, recalled pet food;

D.     An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

E.     Such other and further relief as this Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Dated: New York, New York
      July 2, 2012

                   ABBEY SPANIER RODD & ABRAMS, LLP

                   By:_____
                   Nancy Kaboolian
                   nkaboolian@abbeyspanier.com
                   Orin Kurtz
                   okurtz@abbeyspanier.com
                   212 East 39th Street
                   New York, New York 10016
                   Telephone:  212-889-3700

                   JEFFREY MARCUS, ESQ.
                   Jeffm271@aol.com
                   260 Lexington Avenue
                   New York, New York 10016
                   (212) 949-2202

                   **Attorneys for Plaintiff**